1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   PHUOC LUU,                        CASE NO. 13-CV-1182-MMA
                                       (RBB)
12                    Petitioner,
                                       **REPORT AND RECOMMENDATION**
13       vs.                           **GRANTING RESPONDENT'S MOTION**
                                       **TO DISMISS PETITION FOR WRIT**
14   JEFFREY BEARD, Secretary,         **OF HABEAS CORPUS [ECF NO.**
                                       **11]**
15                    Respondent.

16

17       Petitioner Phuoc Luu, a state prisoner proceeding pro se,

18   filed a Petition for Writ of Habeas Corpus [ECF No. 1] pursuant to

19   28 U.S.C. § 2254.  The Petition was originally submitted to the

20   United States District Court for the Eastern District of

21   California on May 13, 2013, and transferred to this Court on May

22   17, 2013 [ECF No. 3].  The Court dismissed the Petition without

23   prejudice for failure to pay the filing fee or request to proceed

24   in forma pauperis.  (Order Dismissing Case Without Prejudice, ECF

25   No. 6.)  Luu moved for leave to proceed in forma pauperis [ECF No.

26   7], but the Court denied the Motion, noting that Petitioner

27   appeared to have funds to pay the $5 fee associated with filing

28

1  the case.   (Order Denying In Forma Pauperis Application &

2  Dismissing Case Without Prejudice, ECF No. 8.)   Luu eventually

3  paid the filing fee [ECF No. 9], and the Court ordered briefing

4  from the Respondent.   (Order Reopening Case & Setting Briefing

5  Schedule, ECF No. 10.)

6       In this action, Luu does not challenge his state court

7  conviction or sentence.   Instead, Petitioner claims that he was

8  denied due process during a prison investigation into his alleged

9  involvement in a conspiracy to murder a prison staff member, and

10 he seeks to expunge all references to this allegation from his

11 central file.   (Pet. 1-3, 9, 11, 15, ECF No. 1.)[1]   On September

12 20, 2013, Respondent Beard filed a Notice of Motion and Motion to

13 Dismiss Petition for Writ of Habeas Corpus; Memorandum of Points

14 and Authorities in Support Thereof, and a Notice of Lodgment [ECF

15 No. 11].   Respondent moved to dismiss the Petition as untimely

16 under the statute of limitations as set forth by the Antiterrorism

17 and Effective Death Penalty Act, and also on the ground that Luu's

18 Petition is not cognizable on federal habeas corpus review because

19 it does not challenge the legality or duration of his confinement.

20 (Resp't's Mot. Dismiss Attach. #1 Mem. P. & A. 2-9, ECF No. 11.)

21 Luu's opposition to the Respondent's motion was due by October 28,

22 2013.   (Order Reopening Case 2, ECF No. 10.)   To date, the Court

23 has not received any opposition from the Petitioner.   Luu also

24 failed to file any requests for enlargement of time.

25 _____

26 [1] Because Luu's Petition is not consecutively paginated, the Court
   will refer to it using the page numbers designated by the Court's
27 ECF system.   Similarly, Lodgment Nos. 2 and 4 are not
   consecutively paginated, so the Court has paginated the documents
28 and will cite to each using the assigned page numbers.

The Court has reviewed the Petition, Respondent's Motion to Dismiss, the memorandum in support of the motion, and the lodgments.  For the reasons expressed below, Respondent's Motion to Dismiss should be **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2010, while Luu was housed at the California Medical Facility ("CMF"), he was placed in an Administrative Segregation Unit ("ASU") pending an investigation into Petitioner's alleged involvement in a conspiracy to murder a staff member.  (Pet. 12, ECF No. 1.)  The investigation was completed by June 25, 2010.  (Id.)  Luu alleges that although he was not convicted of any charge, he nonetheless remained in ASU until his transfer to Centinela State Prison.  (Id.)

On August 12, 2010, Luu filed an administrative appeal complaining about being in ASU for over two months and being scheduled for transfer despite the lack of evidence against him. (See Lodgment No. 2, Luu v. Dickinson, Case No. FCR290989 (Cal. Super. Ct. filed Feb. 22, 2012) (petition for writ of habeas corpus attachment A, Inmate/Parolee Appeal Form at 14).)  Luu requested that his transfer be halted until the investigation being conducted by the "outside agency" was completed and that he be allowed to stay at CMF.  (Id.)  Petitioner also demanded information about the allegations or evidence tying him to the conspiracy:  "How can an investigation be so secret that in two months I still don't know who the conspiracy was against, how my name was injected into this so-called conspiracy, or what outside agency is looking into the issue?"  (Id. at 15.)  Finally, Luu contended that the language in the CDC Form 114D, ASU Placement

Notice, contains "latent ambiguities" that would allow the parole board to deny him parole consideration. (Id.)

On August 20, 2010, Petitioner's appeal was granted in part and denied in part. (See Lodgment No. 2, Luu v. Dickinson, Case No. FCR290989 (petition for writ of habeas corpus attachment A, memorandum at 16-17 (dated Aug. 20, 2010).) Luu received a copy of two confidential information disclosure forms CDC 1030 generated by Lieutenant T. Lee, who prepared a confidential report regarding Luu's transfer. (Id. at 16.) The CDC denied Luu's request to stop the transfer, to reveal the name of the investigating agent, or to remove the language in CDC114D from his central file. (Id. at 17.)

On September 7, 2010, Petitioner submitted his second level appeal. (Lodgment No. 2, Luu v. Dickinson, Case No. FCR290989 (petition for writ of habeas corpus at 11.) The appeal was denied on September 29, 2010. (Id.) On July 14, 2011, Luu's final level administrative appeal was denied. (Id.)

Petitioner's first state habeas corpus petition was filed on February 22, 2012, but placed in the mail for service on February 17, 2012. (Id. at 1, 34.) The petition was denied on April 18, 2012. (Lodgment No. 3, In re Luu, Case No. FCR290989, order at 1 (Cal. Super. Ct. Apr. 19. 2012.) On July 5, 2012, Luu constructively filed his habeas petition with the California Court of Appeal. (Lodgment No. 4, Luu v. Dickinson, Case No. [A1355931] (Cal. Ct. App. filed July 5, 2012) (petition for writ of habeas corpus at 39).) According to Luu, this petition was denied on July 27, 2012. (Pet. 3, ECF No. 1.) He then filed a petition for

a writ of habeas corpus with the California Supreme Court that was summarily denied on November 28, 2012.  (Id. at 52.)

## II.   STANDARD OF REVIEW

Luu's federal Petition for Writ of Habeas Corpus was dated May 9, 2013, and filed on May 13, 2013.  (Pet. 1, 6, ECF No. 1.) Under the mailbox rule, a petition is filed on the date Petitioner hands it to prison authorities for mailing.  Houston v. Lack, 487 U.S. 266, 276 (1988); Campbell v. Henry, 614 F.3d 1056 (9th Cir. 2010); see also Rule 3(d), Rules Governing Section 2254 Cases, 28 U.S.C.A. foll. § 2254 (West 2006).  Under the mailbox rule, the Court considers the Petition filed on May 9, 2013, the date Luu signed it.  Because Luu filed his Petition after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  28 U.S.C.A. § 2244 (West 2006).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Id. § 2254(a); see also Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).  In 1996, Congress "worked substantial changes to the law of habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).  Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

1

2

> determined by the Supreme Court of the United
> States; or

3

4

> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

5

6

28 U.S.C.A. § 2254(d).

7

8

9

    To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."  See id. § 2254(a).  Petitioner must allege that the state court violated his federal constitutional rights.  See Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).

10

11

12

13

14

    A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson, 921 F.2d at 885 (concluding that federal courts have no authority to review a state's application of its law).  Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that

matters under § 2254(d)(1) — whether a state court decision is

contrary to, or involved an unreasonable application of, clearly

established Federal law." Id. at 71 (citation omitted).  In other

words, a federal court is not required to review the state court

decision de novo.  Id.  Rather, a federal court can proceed

directly to the reasonableness analysis under § 2254(d)(1).  Id.

The "novelty" in § 2254(d)(1) is "the reference to 'Federal

law, as determined by the Supreme Court of the United States.'"

Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd

on other grounds, 521 U.S. 320 (1997).  Section 2254(d)(1)

"explicitly identifies only the Supreme Court as the font of

'clearly established' rules."  Id.  "[A] state court decision may

not be overturned on habeas corpus review, for example, because of

a conflict with Ninth Circuit-based law."  Moore, 108 F.3d at 264.

"[A] writ may issue only when the state court decision is

'contrary to, or involved an unreasonable application of,' an

authoritative decision of the Supreme Court."  Id.; see also

Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996); Childress

v. Johnson, 103 F.3d 1221, 1225 (5th Cir. 1997); Devin v. DeTella,

101 F.3d 1206, 1208 (7th Cir. 1996).

> [A] state court decision is "contrary to [the Supreme
> Court's] clearly established precedent if the state
> court applies a rule that contradicts the governing law
> set forth in [the Court's] cases" or "if the state court
> confronts a set of facts that are materially
> indistinguishable from a decision of [the] Court and
> nevertheless arrives at a result different from . . .
> precedent."

Lockyer, 538 U.S. at 73 (quoting Williams v. Taylor, 529 U.S. 362,

405-06 (2000)).  A state court unreasonably applies federal law if

1  its application is "objectively unreasonable," which is "more than
2  [being] incorrect or erroneous."  Id. at 75.

### III.   DISCUSSION

Respondent argues that Luu's Petition is untimely under the
applicable statute of limitations and otherwise fails to state a
claim for federal habeas corpus relief.  (Resp't's Notice Mot. &
Mot. Dismiss 2, ECF No. 11.)  The Court first addresses whether
Luu's claims are appropriate for review under the federal habeas
statute.

### A.   Luu's Entitlement to Federal Habeas Relief

Respondent contends that Luu's Petition should be dismissed
because the claims Petitioner asserts do not entitle him to
federal habeas relief.  (Resp't's Mot. Dismiss Attach. #1 Mem. P.
& A. 8, ECF No. 11.)  Specifically, Beard argues that the
inconclusive prison investigation and Luu's subsequent transfer
cannot be addressed on habeas corpus because they do not adversely
impact the fact or duration of his confinement.  (Id.)

Generally, prisoner petitions fall into two distinct
categories:  "(1) those challenging the fact or duration of
confinement itself; and (2) those challenging the conditions of
confinement."  McCarthy v. Bronson, 500 U.S. 136, 140 (1991).

> "Federal law opens two main avenues to relief on
> complaints related to imprisonment:  a petition for
> habeas corpus, 28 U.S.C. § 2254, and a complaint under
> the Civil Rights Act of 1871, Rev. Stat. § 1979, as
> amended, 42 U.S.C. § 1983.  Challenges to the validity
> of any confinement or to particulars affecting its
> duration are the province of habeas corpus.  An inmate's
> challenge to the circumstances of his confinement,
> however, may be brought under § 1983."

Hill v. McDonough, 547 U.S. 573, 579 (2006) (quoting Muhammad v.
Close, 540 U.S. 749, 750 (2004) (per curiam)); see also Badea v.

1   Cox, 931 F.2d 573, 574 (9th Cir. 1991) (describing the scope of

2   habeas proceedings and civil rights actions).  A writ of habeas

3   corpus is the "sole" federal remedy when "a state prisoner is

4   challenging the very fact or duration of his physical

5   imprisonment, and the relief he seeks is a determination that he

6   is entitled to an immediate or speedier release from that

7   imprisonment . . . ."  Preiser v. Rodriquez, 411 U.S. 475, 500

8   (1973).  The Supreme Court explained that the specific provisions

9   in the federal habeas statute foreclose the more general remedy

10  under § 1983.  Id. at 490.  "Congress has determined that habeas

11  corpus is the appropriate remedy for state prisoners attacking the

12  validity of the fact or length of their confinement, and that

13  specific determination must override the general terms of § 1983."

14  Id.

15      The Ninth Circuit has permitted resort to habeas corpus

16  petitions to assert claims that are "likely to accelerate"

17  eligibility for parole, even though success in those cases would

18  not necessarily implicate the fact or duration of confinement.

19  Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004) (citing

20  Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989); Ramirez v.

21  Galaza, 334 F.3d 850, 858 (9th Cir. 2003)).  In Docken, the

22  prisoner challenged the state parole board's refusal to review his

23  suitability for parole on an annual basis.  The Ninth Circuit

24  concluded that a "sufficient nexus to the length of imprisonment"

25  exists, and therefore habeas corpus relief is available where a

26  prison inmate "seek[s] only equitable relief in challenging

27  aspects of [his] parole review that . . . could potentially affect

28

1   the duration of [his] confinement . . . ."   <u>Docken</u>, 393 F.3d at

2   1031.

3           Success on the merits in such cases [those outside the
            "core" habeas claims identified in <u>Preiser</u>] would not

4           '<u>necessarily</u>' implicate the fact or duration of
            confinement.  Instead, such claims have, at best, only a

5           <u>possible</u> relationship to the duration of a prisoner's
            confinement, as eligibility for parole is distinct from

6           entitlement to parole.

7   <u>Id.</u> at 1028-29.  The court held that the district court's

8   dismissal of Docken's habeas petition was error and reversed.   <u>Id.</u>

9   at 1032.

10          "Habeas corpus jurisdiction also exists when a [prisoner]

11  seeks expungement of a disciplinary finding from his record if

12  expungement is likely to accelerate the prisoner's eligibility for

13  parole."   <u>Bostic</u>, 884 F.2d at 1269 (citing <u>McCollum v. Miller</u>, 695

14  F.2d 1044, 1047 (7th Cir. 1982)).  "'[T]he <u>likelihood</u> of the

15  effect on the overall length of the prisoner's sentence . . .

16  determines the availability of habeas corpus.'"   <u>Docken</u>, 393 F.3d

17  at 1028 (quoting <u>Ramirez</u>, 334 F.3d at 858).  "[C]hallenges to the

18  procedures used in denying parole are <u>only</u> cognizable via habeas."

19  <u>Docken</u>, 393 F.3d at 1029 (citing <u>Butterfield v. Bail</u>, 120 F.3d

20  1023, 1024 (9th Cir. 1997)).  On the other hand, "habeas

21  jurisdiction is absent, and a § 1983 action proper, where a

22  successful challenge to a prison condition will not necessarily

23  shorten the prisoner's sentence."   <u>Ramirez</u>, 334 F.3d at 859.

24          Respondent argues that Luu's Petition fails to plead a

25  federal habeas claim because Petitioner challenges the scope of a

26  prison investigation that did not lead to any disciplinary charges

27  against him.  (Resp't's Mot. Dismiss Attach. #1 Mem. P. & A. 8,

28  ECF No. 11.)  Beard concedes that Luu "does make a general,

unsubstantiated allegation that the inconclusive investigation somehow adversely affects his chances of parole, but he fails to explain, let alone demonstrate, how or why this is true, especially considering that no disciplinary action was ever taken against him." (Id. at 8-9 (footnote omitted) (internal citation omitted).)

In his Petition, Luu states that he "challenge[s] the adverse documentation currently contained within his central file. Such documentation, as written, only serves as a means by which to vilify Petitioner, and which continues to lead to a miscarriage of justice, adversely [a]ffecting Petitioner's chances for parole." (Pet. 11, ECF No. 1.) Luu refers to the language in the CDC Form 114D, ASU Placement Notice, which lists reasons for placement: "[Petitioner] presents an immediate threat to the safety of self or others," and "endangers institution security." (Id. at 34.) The CDC Form 114D also states:

> On July 21, 2010, you are currently housed in ASU. Initially, on June 3, 2010 you were removed from the General Population and placed in Administrative Segregation Unit (ASU) pending an investigation in to [sic] your role in a conspiracy to commit murder on a California Medical Facility (CMF) Staff Member. As of June 25, 2010, the investigation has been completed and your role in this conspiracy could not be determined. However, the facts revealed in the investigation, could not exonerate you as a suspect in the investigation. Based on the particular elements of the investigation that is deemed as "Highly Sensitive" your presence in CMF General Population is deemed a threat to the safety and the security of the Institution, its staff and inmates. You will remain in ASU and be seen by the Institution Classification Committee to establish your current and future housing and program needs.

(Id. at 34.) Petitioner claims that these remarks in the Placement Notice would allow the parole board to deny him parole. (Id. at 24.)

Respondent argues that the federal courts lack habeas jurisdiction over claims that do not "necessarily spell speedier release." (Resp't Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 11.)  He cites <u>Skinner v. Switzer</u>, 562 U.S. __, 131 S. Ct. 1289, 1298-99 n.13 (2011), and <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005), as support for his argument that Petitioner's claim does not lie in habeas and may be brought, if at all, under § 1983. (<u>Id.</u>)

The plaintiff in <u>Skinner</u> was a state prisoner who had requested and been denied testing under a Texas statute that permitted prisoners to obtain postconviction DNA testing. <u>Skinner</u>, 562 U.S. at __, 131 S. Ct. at 1296.  He subsequently brought suit under § 1983, alleging that the statutory scheme denied him procedural due process.  The district court dismissed the complaint for failure to state a claim, reasoning that postconviction requests for DNA evidence are cognizable only in habeas corpus, not under § 1983, and the appellate court affirmed. <u>Id.</u> at 1295-96.  The Supreme Court granted review to decide whether "a convicted state prisoner seeking DNA testing of crime-scene evidence [may] assert that claim in a civil rights action under 42 U.S.C. § 1983, or is such a claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus under 28 U.S.C. § 2254?" <u>Id.</u> at 1293.  Reversing the Fifth Circuit, the Supreme Court held that Skinner's claim could be brought under § 1983 because "[s]uccess in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction.  While test results might prove exculpatory, that outcome is hardly inevitable; [the] results might prove

13cv1182

inconclusive or they might further incriminate Skinner."  <u>Id.</u> at

1298.

The Court in <u>Skinner</u> discussed the limits of § 1983

jurisdiction, beginning with the rule established by <u>Heck v.

Humphrey</u>, 512 U.S. 477 (1994), that a state prisoner may not

maintain a § 1983 claim for damages if a judgment in his favor

"'would necessarily imply the invalidity of his conviction or

sentence'".  <u>Skinner</u>, 562 U.S. at __, 131 S. Ct. at 1298 (quoting

<u>Heck</u>, 512 U.S. at 487).  The decision pointed out the significance

of the term "necessarily" as used in <u>Heck</u>.  <u>Id.</u> (quoting <u>Nelson v.

Campbell</u>, 541 U.S. 637, 647 (2004)).

In <u>Nelson</u>, an earlier case, the Court explained:

> Although damages are not an available habeas remedy, we
> have previously concluded that a § 1983 suit for damages
> that would "necessarily imply" the invalidity of the
> fact of an inmate's conviction, or "necessarily imply"
> the invalidity of the length of an inmate's sentence, is
> not cognizable under § 1983 unless and until the inmate
> obtains favorable termination of a state, or federal
> habeas, challenge to his conviction or sentence.  This
> "favorable termination" requirement is necessary to
> prevent inmates from doing indirectly through damages
> actions what they could not do directly by seeking
> injunctive relief —- challenge the fact or duration of
> their confinement without complying with the procedural
> limitations of the federal habeas statute.  Even so, we
> were careful in <u>Heck</u> to stress the importance of the
> term "necessarily."  For instance, we acknowledged that
> an inmate could bring a challenge to the lawfulness of a
> search pursuant to § 1983 in the first instance, even if
> the search revealed evidence used to convict the inmate
> at trial, because success on the merits would not
> "<u>necessarily</u> imply that the plaintiff's conviction was
> unlawful."  To hold otherwise would have cut off
> potentially valid damages actions as to which a
> plaintiff might never obtain favorable termination —-
> suits that could otherwise have gone forward had the
> plaintiff not been convicted.

<u>Nelson</u>, 541 U.S. at 646-47 (citations omitted).

Respondent's reliance on <u>Skinner</u> is misplaced.  <u>Skinner</u> arose in a § 1983 context, and a careful reading of the opinion makes it clear that the limiting language refers to claims under § 1983, and not habeas jurisdiction.  Indeed, the Supreme Court has long held that an action under § 1983 is not available "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment . . . ."  <u>Preiser</u>, 411 U.S. 475, 500 (1973).

Respondent's citation to <u>Wilkinson v. Dotson</u>, 544 U.S. 74, is likewise unavailing.  <u>Wilkinson</u> explained that, beginning with <u>Preiser</u>, the Supreme Court has held that a § 1983 claim is not available if that claim will either result in an "immediate or speedier release" from custody or "a judicial determination that necessarily implies the unlawfulness of the State's custody."  <u>Id.</u> at 81.

<u>Ramirez v. Galaza</u>, 334 F.3d at 853, another case cited by the Respondent, arose in the context of a § 1983 challenge to the procedures used in the prisoner's disciplinary hearing and the resulting sentence.  There, the Ninth Circuit held that a plaintiff may bring a § 1983 case to challenge the disciplinary conviction.  <u>Id.</u> at 859.  "As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983."  <u>Id.</u>  The court explained that "if Ramirez is successful in attacking the disciplinary hearing and expunging his sentence, '[t]he parole board will still have the authority to deny [his] request[ ] for parole on the basis of any of the grounds presently available to it in evaluating such a

- 14 -

1   request.'" <u>Id.</u> (alterations in original) (quoting <u>Neal v. Shimoda</u>,

2   131 F.3d 818, 824 (9th Cir. 1997)).

3       Finally, to the extent Respondent relies on <u>Blair v. Martel</u>,

4   645 F.3d 1151 (9th Cir. 2001), the facts of that case are

5   distinguishable.  In <u>Blair</u>, the petitioner challenged "the

6   California Supreme Court's delay in processing his direct appeal."

7   <u>Id.</u> at 1157.  The Ninth Circuit concluded that it lacked habeas

8   jurisdiction over the case because the request for an expedited

9   appeal did not "necessarily spell speedier release."  <u>Id.</u>  "[A]

10  request for an order directing a state court to hasten its

11  consideration of an appeal belongs in a § 1983 complaint, not a

12  habeas petition."  <u>Id.</u> at 1157-58 (footnote omitted).

13      The United States Supreme Court has recognized that "the

14  demarcation line between civil rights actions and habeas petitions

15  is not always clear[,]" and in some instances, "the same

16  constitutional rights might be redressed under either form of

17  relief."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 579 (1974) (citations

18  omitted).  The Ninth Circuit has acknowledged "that § 1983 and

19  habeas are not always mutually exclusive."  <u>Osborne v. District</u>

20  <u>Attorney's Office for Third Judicial Dist.</u>, 423 F.3d 1050, 1055

21  (9th Cir. 2005) (citing <u>Docken</u>, 393 F.3d at 1030-31 & n.6).  The

22  distinction between the two remedies is especially challenging in

23  parole-related cases.  <u>Docken</u>, 393 F.3d at 1030 n.6.  The overlap

24  between remedies, however, does not deprive federal courts of

25  habeas jurisdiction.

26      Many decisions in this circuit have found habeas jurisdiction

27  available for suits that do not fit squarely within the core of

28  habeas corpus proceedings.  <u>See</u> <u>Bostic</u>, 884 F.2d at 1269 (noting

that habeas jurisdiction exists to expunge a disciplinary finding likely to accelerate eligibility for parole); <u>Gray v. Beard</u>, No. 12-CV-1911-H (RBB), 2013 WL 4782821, at *5 (S.D. Cal. Sept. 6, 2013) (concluding that petitioner's claim to expunge his gang member designation is cognizable on habeas corpus); <u>Walker v. Hill</u>, No. 2:12-cv-1601 GEB JFM P, 2012 WL 5042514, at *1-2 (E.D. Cal. Oct. 17, 2012) (finding that petitioner serving an indeterminate life sentence with the possibility of parole stated a federal habeas claim in seeking expungement of a disciplinary violation); <u>Flores v. Lewis</u>, No. C 10-2773 RMW (PR), 2011 WL 2531240, at *3-4 (N.D. Cal. June 24, 2011) (concluding that seeking expungement of inmate's revalidation as an active gang member stated a habeas corpus claim); <u>Larriva v. Watson</u>, No. 1:06-cv-01453 OWW WMW, 2008 WL 398847, at *2-3 (E.D. Cal. Feb. 12, 2008) (stating that a claim challenging gang validation and SHU placement may be asserted in a habeas petition).

In this case, Luu has alleged that the adverse documentation in his central file affects his chances for parole. (Pet. 11, ECF No. 1.) Petitioner's file includes the CDC Form 114D, ASU Placement Notice, which indicates that Petitioner "presents an immediate threat to the safety of self or others," and "endangers institution security." (<u>Id.</u> at 34.) Expungement of these findings, if appropriate, could affect the duration of Luu's confinement by making it more likely that he would be granted parole. <u>See, e.g.</u>, <u>Martin v. Tilton</u>, No. 08-55392, 2011 WL 1624989, at *1 (9th Cir. April 29, 2011) (unpublished

//

//

13cv1182

memorandum disposition)[2] ("Even though Martin did not forfeit any work-time credits as a result of the disciplinary finding, we have [habeas corpus] jurisdiction because the Board of Parole will consider the charge when it evaluates Martin's eligibility for parole.").  Similarly, Petitioner's claim to expunge the adverse documentation is cognizable on habeas corpus.  See Larriva v. Watson, 2008 WL 398847, at *3.  Therefore, Luu states a federal habeas claim, and the Court recommends denying the Motion to Dismiss on this ground.

**B.   AEDPA's One-Year Statute of Limitations**

Respondent Beard also moves to dismiss Luu's Petition as untimely.  (Resp't's Mot. Dismiss Attach. #1 Mem. P. & A. 2-7, ECF No. 11.)  The statute of limitations for federal habeas corpus petitions is set forth in § 2244(d), which provides in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] Pursuant to Ninth Circuit Local Rule 36-3, unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1 but are not precedent.

1

2          (D) the date on which the factual predicate of the
           claim or claims presented could have been
3          discovered through the exercise of due diligence.

4    28 U.S.C.A. § 2244(d)(1).

5        A federal petition for writ of habeas corpus may be dismissed

6    with prejudice when it was not filed within AEDPA's one-year

7    statute of limitations.  Jiminez v. Rice, 276 F.3d 478, 483 (9th

8    Cir. 2001).  The statute of limitations is a threshold issue that

9    must be resolved before the merits of individual claims.  White v.

10   Klitzkie, 281 F.3d 920, 921-22 (9th Cir. 2002).

11       In most cases challenging a conviction or sentence, the

12   limitation period begins running on the date that the petitioner's

13   direct review became final.  28 U.S.C.A. § 2244(d)(1)(A).  Where,

14   however, "a habeas petitioner challenges an administrative

15   decision affecting the 'fact or duration of his confinement,'

16   AEDPA's one-year statute of limitations runs from when the

17   'factual predicate' of the habeas claims 'could have been

18   discovered through the exercise of due diligence.'"  Mardesich v.

19   Cate, 668 F.3d 1164, 1172 (9th Cir. 2012) (quoting 28 U.S.C.

20   § 2244(d)(1)(D)).  Typically, the factual predicate is the denial

21   of an administrative appeal.  See Shelby v. Bartlett, 391 F.3d

22   1061, 1066 (9th Cir. 2004) (holding that the statute of

23   limitations begins to run when the petitioner's administrative

24   appeal was denied); Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir.

25   2003) (holding that the Board of Prison Term's denial of an

26   inmate's administrative appeal was the "factual predicate" of the

27   inmate's claim that triggered the commencement of the limitations

28   period).

Respondent argues that the factual predicate for Luu's federal claim arose on July 14, 2011, when the final administrative appeal challenging the investigation was concluded. (Resp't's Mot. Dismiss Attach. #1 Mem. P. & A. 3, ECF No. 11.) Respondent claims that the AEDPA limitations period began to run the next day, July 15, 2011. See Shelby, 391 F.3d at 1066. Under 28 U.S.C. § 2244(d), Luu had one year from that date, or until July 16, 2012, to file his federal petition for writ of habeas corpus. Fed. R. Civ. P. 6(a)(1)(C) ("[I]n computing any time period specified . . .in any statute . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); see Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that the statute of limitations shall be calculated according to Fed. R. Civ. P. 6(a)). Petitioner filed this action on May 9, 2013, approximately ten months after the limitations period had expired. Absent any applicable tolling, the Petition is untimely.

**1. Statutory tolling**

The statute of limitations under AEDPA is tolled during periods in which a "properly filed" habeas corpus petition is "pending" in the state courts. 28 U.S.C.A. § 2244(d)(2). The statute specifically provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Id.; see also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005). "[A]n application is 'properly filed' when its delivery

13cv1182

and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (explaining that typical filing requirements include all relevant time limits).

The interval between the disposition of one state petition and the filing of another may be tolled under "interval tolling." Carey v. Saffold, 536 U.S. 214, 223 (2002). "[T]he AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting Barnett v. Lamaster, 167 F.3d 1321, 1323 (10th Cir. 1999)); see also Carey, 536 U.S. at 219-22. The statute of limitations is tolled from the time a petitioner's first state habeas petition is filed until state collateral review is concluded, but it is not tolled before the first state collateral challenge is filed. Thorson v. Palmer, 479 F.3d 643, 646 (9th Cir. 2007) (citing Nino, 183 F.3d at 1006). "The period that an application for post-conviction review is pending is not affected or 'untolled' merely because a petitioner files additional or overlapping petitions before it is complete." Delhomme v. Ramirez, 340 F.3d 817, 820 (9th Cir. 2003).

As stated above, the limitations period began to run on July 15, 2011. Luu's state court petition for a writ of habeas corpus was constructively filed in Solano County Superior Court on February 17, 2012. (Lodgment No. 2, Luu v. Dickinson, Case No. Case No. FCR290989 (petition for writ of habeas corpus at 6-7).) This 217-day span is not statutorily tolled and counts toward the

one-year limitations period.  See Thorson, 479 F.3d at 646.  Luu's
superior court petition was denied on April 19, 2012. (Lodgment
No. 3, In re Luu, Case No. FCR290989, order at 2 (Cal. Super. Ct.
Apr. 19, 2012).)  He then waited seventy-seven days, until July 5,
2012, before constructively filing his appellate habeas petition
with the California Court of Appeal. (Lodgment No. 4, Luu v.
Dickinson, Case No. [A135931] (petition for writ of habeas corpus
at 8-9).)  Respondent argues that Petitioner's unexplained delay
in bringing his appellate petition is unreasonable, and he should
not be entitled to gap tolling for this period of time. (Resp't's
Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF No. 11.)

     Statutory tolling applies to "intervals between a lower court
decision and a filing of a new petition in a higher court . . . ."
Carey, 536 U.S. at 223.  A petitioner is thus entitled to
statutory tolling, "not only for the time that his petitions were
actually under consideration, but also for the intervals between
filings, while he worked his way up the ladder[,]" Biggs v.
Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey, 536
U.S. at 223), so long as those filings are timely, Carey, 536 U.S.
at 225-26.

     In California, a petition for collateral review is timely if
filed within a "reasonable" amount of time; this contrasts with
states that specify a time limit, usually thirty or forty-five
days.  Carey, 536 U.S. at 222-23.  Luu waited seventy-seven days
after his superior court habeas petition was denied to file a
petition with the appellate court.  Because this gap is not
explained, interval tolling does not apply to the period between
the denial of Luu's superior court petition and his constructive

filing of the next petition with the California Court of Appeal. The petition to the higher court was not filed within a "reasonable time," presumptively thirty to sixty days.  See Evans, 546 U.S. at 192-93.  "[I]f the successive petition was not timely filed, the period between petitions is not tolled."  Banjo v. Ayers, 614 F.3d 964, 969 (9th Cir. 2010).  Thus, the period of seventy-seven days is not statutorily tolled and must be counted toward the limitations period.  See Livermore v. Sandor, 487 F. App'x 342, 343-44 (9th Cir. 2012) (concluding that delay of seventy-six days between state habeas petitions was unreasonable); Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (finding delays of eighty-one and ninety-one days were unreasonable).

The California Court of Appeal denied Luu's habeas petition on July 27, 2012.  (See Pet. 3; 50, ECF No. 1.)  He filed a habeas corpus petition with the California Supreme Court that was denied on November 28, 2012.  (Id. at 52.)  "The statute of limitations period is . . . not tolled after state post-conviction proceedings are final and before federal habeas proceedings are initiated." Roy v. Lampert, 465 F.3d 964, 968 (9th Cir. 2006) (citing 28 U.S.C. § 2244(d)(2)); Nino, 183 F.3d at 1006.  A decision of the California Supreme Court becomes final upon filing.  Phelps v. Alameda, 366 F.3d 722, 724 n.1 (9th Cir. 2004); Burton v. Cate, No. 10-1797-WQH(WVG), 2011 WL 4529664, at *4 n.3 (S.D. Cal. June 17, 2011); Cal. Rules of Court, Rule 8.532(b)(2)(C).  Thus, the time period after the denial of Luu's petition by the California Supreme Court and before the filing of his federal habeas petition is not statutorily tolled.  Luu constructively filed his federal habeas petition on May 9, 2013, or 162 days after the California

Supreme Court denied his petition.  This period must be counted against the one-year limitation period.

The AEDPA statute of limitations period was running in this case for 217 days before Luu filed his state habeas petition, 77 days between the state superior court's denial of Luu's petition and his filing of the next petition with the California Court of Appeal, and 162 days between the date the California Supreme Court denied his petition and Luu constructively filed his federal habeas petition.  The three periods when the limitations period was not tolled total 456 days, which exceeds the AEDPA's one-year statute of limitations.  28 U.S.C. § 2244(d)(1)(A).  Accordingly, Luu is not entitled to statutory tolling.

## 2.  Equitable tolling

Equitable tolling of the statute of limitations is appropriate when the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' . . . ." <u>Holland v. Florida</u>, 560 U.S. 631, 632 (2010) (quoting <u>Pace</u>, 544 U.S. at 418); <u>see also</u> <u>Lawrence v. Florida</u>, 549 U.S. 327, 335 (2007) (same); <u>Rouse v. U.S. Dep't of State</u>, 548 F.3d 871, 878-79 (9th Cir. 2008) (same). A petitioner is entitled to equitable tolling of AEDPA's one-year statute of limitations where "'extraordinary circumstances beyond a prisoner's control made it impossible'" to file a timely petition. <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003) (quoting <u>Brambles v. Duncan</u>, 330 F.3d 1197, 1202 (9th Cir. 2003)).

"'[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" <u>Miranda v. Castro</u>, 292 F.3d 1063, 1066 (9th Cir. 2002)

(alteration in original) (quoting <u>United States v. Marcello</u>, 212 F.3d 1005, 1010 (7th Cir. 2000).   The failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence.   <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999).   "Determining whether equitable tolling is warranted is a 'fact-specific inquiry.'"   <u>Spitsyn</u>, 345 F.3d at 799 (quoting <u>Frye v. Hickman</u>, 273 F.3d 1144, 1146 (9th Cir. 2001)).

Respondent argues that Luu is not entitled to equitable tolling because Petitioner fails "to explain his unreasonable delay in commencing his federal action, let alone establish that extraordinary circumstances prevented him from filing the Petition in a timely manner, and that he has otherwise been diligent in pursuing his federal habeas claims." (Resp't's Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 11.)   Luu has not opposed Respondent's Motion and has not alleged any facts in his Petition that would explain his delay in bringing this Petition. Petitioner has failed to meet his burden of establishing that "extraordinary circumstances" were the proximate cause of his untimeliness.   <u>See Spitsyn</u>, 345 F.3d at 799.   Accordingly, the Court concludes that Luu is not entitled to equitable tolling of the statute of limitations.

Based on the foregoing, the Court recommends granting the Motion to Dismiss the Petition as untimely.

## IV.   CONCLUSION

For the reasons set forth above, Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus should be **GRANTED**. This Report and Recommendation will be submitted to the United

13cv1182

States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before May 23, 2014. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before June 6, 2014.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  April 25, 2014

_____
Ruben B. Brooks
United States Magistrate Judge